## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## ANDERSON DIVISION

| | |
|---|---|
| Joshua Ferguson, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| v. ) | **(JURY TRIAL DEMANDED)** |
| ) | |
| Southern Concrete and Construction, Inc., ) | |
| and Kelly Boulware, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

NOW COMES the Plaintiff, by and through his undersigned counsel, and alleges as follows:

## INTRODUCTION

1. Joshua Ferguson brings this lawsuit against Southern Concrete and Construction, Inc. and Kelly Boulware (collectively "Defendants") seeking to recover for Defendants' violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*., and the South Carolina Wages Act, S.C. Code Ann. §§ 41-10-10 to 110.

## JURISDICTION AND VENUE

2. This Court has original federal question jurisdiction under, 28 U.S.C. § 1331, 29 U.S.C. §§ 216-217 and supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391, and 29 U.S.C. §§ 216-217.

## PARTIES

4. Defendant Southern Concrete and Construction, Inc. ("Southern Concrete") is a corporation that owns and operates a construction business that performs work across the Southeast. Southern Concrete's primary place of business is located within this District at 1101 Trammell Road, Anderson, South Carolina 29621.

5. Southern Concrete has been certified a Disadvantaged Business Enterprise ("DBE") pursuant to 49 C.F.R. Part 26 on account Defendant Kelly Boulware ("Boulware"), a female, controlling the day-to-day operations of the business.

6. Boulware is an "employer" under the FLSA based upon her supervisory authority over all of the employees of the company, the company's daily operations, her ability to make hiring and firing decisions, her control over the amount of pay her employees receive, and her authority over scheduling and directing the employees' daily assignments.

7. Defendants are currently defending a similar lawsuit, *Morris et al v. Southern Concrete and Construction Inc. et. al.*, 8:16-cv-01440-DCC (D.S.C. May 5, 2016), that alleges nearly identical allegations. The Plaintiff in this matter did not opt-in to the *Morris* lawsuit under 29 U.S.C. § 216(b). Since the opt-in period in *Morris* has expired and Plaintiff does not meet the good cause standard for an untimely submission, Plaintiff has decided to file his own lawsuit.

## FACTS
### (TRAVEL TIME)

8. On or about August of 2016, Plaintiff was hired by Defendants as a general laborer for which he was paid an hourly rate of twelve dollars and fifty cents ($12.50). In early 2017, Plaintiff's job title was changed by Defendants to "Concrete Tender" and his rate of pay increased to fifteen dollars ($15.00) per hour.

9. During much of Plaintiff's employment, Defendants required Plaintiff travel with overnight stays to perform his work.

10. As part of Plaintiff's work assignments, Defendants required he and a work crew consisting of approximately 4 to 6 individuals to report to their shop at approximately 4:00 a.m. each Monday morning to acquire the necessary tools and equipment, and load the work truck(s), to perform that particular week's assignments.

11. After the Plaintiff and the work crew finished loading the tools and equipment, they would depart from Defendants' shop in Anderson, South Carolina, i.e., ("The Shop") and travel to that week's work destination in the work truck(s) and begin performing their work.

12. Typically on Fridays, after they completed that week's assignments, Plaintiff and the work crew would load the tools and equipment back on the work truck(s) and depart back to The Shop. The travel time back from the worksite cut across working hours of the preceding days. Upon arriving at The Shop, Plaintiff and the work crew on occasion were required to unload the tools and equipment from the work truck(s). However, the work truck was required to return to the Shop.

13. Defendants failed to pay Plaintiff and the work crew any monies for the travel time required to return the work truck back to The Shop, and the time, when required, it took to unload the work truck(s) at The Shop.

14. Plaintiff and the work crew were always required to report back to The Shop after working at the job site in order to return Defendants' work truck(s) and equipment before retrieving their own personal vehicles to drive home.

15. At no time did Plaintiff, who was a passenger in Defendant's work truck, ever leave the jobsite and travel directly to his home. Specifically, it was Defendant's policy that the work

truck(s) used to travel on the out of town work assignment be directly returned to The Shop on Friday after the week's assignments were completed.

16. The travel time from job sites back to The Shop was compensable time under the FLSA under either 29 C.F.R. § 785.38, Travel that is all in the day's work, and/or 29 C.F.R. § 785.39, Travel away from home community.

17. On July 12, 2017, Boulware attempted to retroactively comply with the above-mentioned FLSA regulations regarding travel time when she paid Plaintiff two-and-a-half hours of overtime for a drive back from Rockingham, North Carolina on Friday June 30, 2017. (See Exhibit A – Letter & Paystub from Boulware).

## FACTS
### (MEAL PERIOD DEDUCTIONS)

18. That Plaintiff and the work crew were at all times herein performing manual labor in the form of construction work outside of an office setting.

19. Defendants had a policy and practice whereby they would deduct from the Plaintiff's and his crew members' time cards thirty (30) minutes each day for lunch period.

20. Defendants made this thirty (30) minute deduction every day from Plaintiff's and the work crews' time cards to include days when the Plaintiff and other crew members spent twenty (20) minutes of less eating their lunch or working continuously while eating their lunch.

21. Additionally, Defendants would make this thirty (30) minute deduction even on days when Plaintiff and other crew members would cease working prior to their typical lunch period. (See Exhibit B – Defendants' Time Card when work ceased at 10:00 am).

22. Upon information and belief, Defendants formatted their time sheets to always deduct thirty (30) minutes from the Plaintiff's and other work crews' time cards even if the

4

supervisor tracking their working hours would not have entered a lunch break deduction of thirty (30) minutes in its computation of total hours worked that particular day.

23. Upon information and belief, all of Defendants' supervisors used the same Microsoft Excel formatted Time Cards like the one found at <u>Exhibit B</u>.

24. The FLSA's 29 C.F.R. § 785.19 mandates that only "bona fide meal periods" may be deducted from an employees' working hours. The aforementioned regulation and related caselaw defines a "bona fide meal period" as a period of rest longer than twenty (20) minutes whereby the employee is "completely relieved from duty for the purposes of eating regular meals."

25. The thirty (30) minute automatic daily deduction from Plaintiff's and his crew members' total daily working hours violates the FLSA's 29 C.F.R. § 785.19 regarding meal periods because on most workdays the Plaintiff and his crew members did not take a "bona fide meal period."

26. On many occasions, the Plaintiff and his crew members were required to work through lunch and eat while performing manual tasks. The very nature of concrete finishing poses certain time constraints that would disallow Plaintiff and his crew members to take a bona fide meal period at certain scheduled daily time.

27. At no time did Plaintiff ever perform any executive, administrative, or professional duties that would weigh in favor of an exempt salaried employee.

28. Nor could Plaintiff be classified as an independent contractor; and therefore, is subject to the Fair Labor Standards Act's ("FLSA") minimum wage and overtime requirements.

29. Plaintiff worked for Defendants on a full time and continuing basis; Plaintiff did not sell or advertise his services to the general public or work as a contractor for anyone other than the above-named Defendants.

30. Plaintiff had no control over the manner and method by which they were paid.

31. Defendants retained the right to discharge Plaintiff without cause.

32. Plaintiff had no opportunity for profit and no risk of loss.

33. Plaintiff is clearly not exempt from the FLSA's minimum wage and overtime requirements.

## FIRST CLAIM FOR RELIEF
### (FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS)

30. Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth herein.

31. At all relevant times, Defendants have had gross revenues in excess of $500,000.00.

32. At all relevant times, Defendants have been, and continue to be, an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

33. At all relevant times, Defendants employed Plaintiff within the meaning of FLSA.

34. Defendants failed to pay any wages to Plaintiff for the compensable time spent traveling from the work destination back to The Shop, and the compensable time unloading the work truck(s) and meal periods that were deducted that were not bona fide meal periods per 29 C.F.R. 785.19.

35. The travel time back to The Shop and unloading of work truck(s) did either cut across employee's work day working hours and/or still are a principal activity of Plaintiff's employment in that such were an integral and indispensable part of employment and not simply postliminary to the work performed. As such, this time was compensable, and Plaintiff was deprived of minimum wage for this time.

36. The travel time back to The Shop and unloading the work truck(s) should not have been exempted from compensable time under the Portal-to-Portal Act of 1947, 29 U.S.C. 251 *et seq*.

37. The meal period of thirty (30) minutes should not have been automatically deducted by Defendants when bona fide meal periods were not given.

38. Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq*. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

39. Due to Defendants' FLSA violations per 29 C.F.R. 785.19, Plaintiff is entitled to recover from the Defendants compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs of this action pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
### (FAIR LABOR STANDARDS ACT OVERTIME WAGE VIOLATIONS)

40. Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth herein.

41. At all relevant times, Defendants have had gross revenues in excess of $500,000.00.

42. At all relevant times, Defendants have been, and continue to be, an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

43. At all relevant times, Defendants employed Plaintiff within the meaning of FLSA.

44. At all relevant times in the period encompassed by this Complaint, Defendants had and maintained a willful policy and practice of refusing to pay minimum wage for all hours worked. By failing to pay for every hour worked, it is inevitable that during certain weeks of

employment Plaintiff would have been denied overtime payments or shorted such payments when he worked in excess of forty (40) hours per workweek.

45. Defendants have violated, and continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq*. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

46. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from the Defendants compensation for unpaid wages, an additional equal amount as liquidated damages, and reasonable attorneys' fees and costs of this action pursuant to 29 U.S.C. § 216(b).

### THIRD CLAIM FOR RELIEF
### (SOUTH CAROLINA PAYMENT OF WAGES ACT)

47. Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

48. At all relevant times, Defendants had employed the Plaintiff within the meaning of the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 to 110 ("PWA").

49. Plaintiff worked for Defendants with the clear understanding and agreement by Defendants that their compensation would be consistent with all applicable laws, including federal and state wage and hour law to include all "prevailing wage" requirements under federal and state Davis-Bacon requirements.

50. Additionally, Defendants promised to pay Plaintiff an agreed to hourly wage and not make arbitrary deductions when Plaintiff was in fact performing work.

51. Pursuant to the PWA, "[a]n employer shall not withhold or divert any portion of the employee's wages unless the employer is required or permitted to do so by state or federal law. . . ." S.C. Code Ann. § 41-10-40(C).

52. Further, "any changes [to] the terms [of wages] must be made in writing at least seven calendar days before they become effective." S.C. Code Ann. § 41-10-30(A).

53. Defendants' policy of failing to Plaintiff a prevailing wage and making deductions from Plaintiff's pay in violation of the FLSA's regulation regarding meal periods constitutes a violation of the PWA. Accordingly, Plaintiff is entitled to receive all compensation of "wages" due and owing to him.

54. As a result of Defendants' unlawful policies and practices as set forth above Plaintiff has been deprived of "wages" due and owing which Defendants promised to pay in their commitment to abide by applicable wage and hour laws and in violation of the PWA's mandate that no wages be withheld or diverted unless required or permitted under applicable law.

55. Defendants have set and withheld wages of the Plaintiff without providing advance notice of such amounts and absent any lawfully sufficient reason for such conduct.

56. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered substantial losses and has been deprived of compensation to which he is entitled, including monetary damages in the amount of three (3) times the unpaid wages as well as costs and reasonable attorneys' fees.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

A. Find that Defendants' FLSA violations were willful;

B. An injunction against Defendant and its officers, agents, successors, employees, representative and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein in the future;

C. For *disgorgement* of revenues, profits and money unjustly earned from the unlawful practices;

D. An award of unpaid minimum wages to Plaintiff;

E. An award of unpaid overtime wages to Plaintiff;

F. Restitution of "wages" improperly retained by Defendants;

G. An award of liquidated damages to Plaintiff;

H. An award of treble damages to Plaintiff to the extent permitted by S.C. Code Ann. § 41-10-80(C);

I. An award of costs and expenses of this action together with reasonable attorneys' fees; and

J. Such other and further relief as this Court deems just and proper.

Respectfully Submitted,

S/ John G. Reckenbeil
John G. Reckenbeil, Fed I.D. No. 7671
Lawrence E. McNair, III, Fed I.D. No. 11723
LAW OFFICE OF JOHN RECKENBEIL, LLC
215 Magnolia Street (29306)
Post Office Box 1633
Spartanburg, South Carolina 29304
Phone: (864) 582-5472
Fax: (864) 582-7280
Email: john@johnreckenbeillaw.com

J. Bradley Bennett, Fed ID No. 8011
Jessica Salvini, Fed ID No. 8019
SALVINI & BENNETT, LLC
101 W. Park Avenue
Greenville, SC 29601
Phone: (864) 232-5800
Email: salvini_bennett@yahoo.com

ATTORNEYS FOR PLAINTIFF

Dated: April 6, 2018
Spartanburg, South Carolina